UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIFFANY GRIFFIN,

    Plaintiff,

*v*.                                   CASE NO. 07-CV-15003

COMMISSIONER OF                DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 8, 9.)

Plaintiff was 36 years of age at the time of the most recent administrative hearing. (Dkt. 4, Tr. at 270.) Plaintiff's relevant employment history included work as a packager for General Motors for nine years, a corrections officer for the Michigan Department of Corrections for one year, and a restaurant worker for ten years. (Tr. at 17, 72.)

Plaintiff filed the instant claim on May 18, 2004, alleging that she became unable to work on November 6, 2003. (Tr. at 15.) The claim was denied initially and upon reconsideration. (Tr. at 31, 37.) In denying Plaintiff's claims, the Defendant Commissioner considered "shoulders, elbows, hands, [and] depression" as possible bases of disability. (Tr. at 37-41.)

On May 23, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Patricia E. Hartman, who considered the case *de novo*. In a decision dated July 16, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 15-26.) Plaintiff requested a review of this decision on July 18, 2007. (Tr. at 8-11.)

The ALJ's decision became the final decision of the Commissioner when, on September 20, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On November 26, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the

claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. " If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Comm'r*, 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g)).

### D.  Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Jeffrey Levin, M.D., a neurologist, from May 2004 through April 2007. (Tr. at 245-56.) Dr. Levin addressed her complaints of pain in the neck, shoulders, elbows and wrists with pain medication, needle examinations, and referrals to orthopedic and radiological specialists. (*Id.*)

Plaintiff was referred to Preecha Supanwanid, M.D., who, at the outset, noted that he "really didn't have much of a recommendation and don't know exactly what needs to be done" and was

6

willing to perform surgery but only gave her a 25-30% chance of improvement. (Tr. at 82.) On November 6, 2003, Dr. Supanwanid performed a fasciotomy and other procedures on Plaintiff's left elbow. (Tr. at 83.) After surgery, Plaintiff continued to complain of pain, although at times she indicated it was a little better. (Tr. at 81.) In April 2004, according to Dr. Supanwanid, Plaintiff believed she could not return to her job and Dr. Supanwanid continued her restriction until May 2004. (Tr. at 81.)

Due to a history of shoulder pain, decreased range of motion, and pain when lifting, an MRI was performed on Plaintiff's shoulder and scapula on May 26, 2004. (Tr. at 85.) The MRI revealed a "mild degree of intrasubstance signal change." (*Id.*) A number of the shoulder tendons were found to be intact. (*Id.*) The "AC joint appear[ed] to show mild degenerative spurring . . . no evidence of a complete tear," but a "possibility of bursal surface tear." (Tr. at 85, 87.) The "findings are consistent with tendinosis or tendinopathy." (Tr. at 85.)

Plaintiff also underwent an MRI of the lumbar spine due to back pain on May 26, 2004. (Tr. at 89-92.) The MRI revealed the presence of "minimal disc degenerative changes [at] L4, L5-S1, [n]o other significant abnormality, [and n]o nerve root encroachment noted." (Tr. at 90.) An MRI regarding neck pain revealed that "[d]egenerative changes at C5-6 and C6-7 are not associated with disc extrusion[,] [and ] [t]he canal, recesses, and foramen are normal at this level and all imaged levels." (Tr. at 92.)

Plaintiff was also referred to Jerome V. Cuillo, M.D., for neck, elbow and shoulder pain from September through October 2004. (Tr. at 142-63.) A CT scan of Plaintiff's left shoulder revealed a "[s]mall grade I SLAP lesion, [l]ax anterior glenohumeral capsular attachment, [and] [m]inimal osteoarthritic degenerative changes at the acromioclavicular joint and glenoid rim." (Tr. at 143.) The CT of her right shoulder revealed "local anteroinferior tear of the glenoid labrum and

7

Grade I SLAP lesion." (Tr. at 145.) Arthrograms taken at the same time revealed no arthrographic abnormalities. (Tr. at 144, 146.) Ultrasounds revealed "[r]estricted voluntary range of motion" in the left shoulder and "[m]ild restriction in voluntary range of motion" in the right shoulder. (Tr. at 147-48.)

A consultative examination was performed by Elaine Kountainis, M.D., on October 9, 2004. (Tr. at 93-98.) Dr. Kountainis concluded that the "left dominant arm from the shoulder to the hand is not functional in either gross or fine motor activities[,] [t]he right dominant has [sic] is functional but lifting weights overhead is painful[,] [s]he is not able to lift more than 10 lbs and not on a repetitive basis[,] [a]ll upper limb exercises on the questionnaire are affected due to her left and right arm pain[,] [e]ven dressing was modified today and done one handed with the right hand only." (Tr. at 95-96.)

Plaintiff also treated with psychiatrist J. Baker, M.D., who diagnosed major depression and prescribed medications. (Tr. at 111, 200-08.) After review of medical records, a DDS psychologist, Dr. Leonard Balunas, Ph.D., concluded that Plaintiff suffers from an affective disorder. (Tr. at 99.) As to Mental Residual Functional Capacity ("RFC"), Dr. Balunas found that Plaintiff was not significantly limited in social interaction or adaptation (Tr. at 114), that Plaintiff was not significantly limited in the abilities to remember locations and work-like procedures and the ability to understand and remember very short and simple instructions, but that she was moderately limited in her ability to understand and remember detailed instructions. (Tr. at 113.) The only areas under sustained concentration and persistence that Dr. Balunas found Plaintiff to be moderately limited in were the abilities to carry out detailed instructions and maintain attention and concentration for extended periods. (*Id.*) All other areas of sustained concentration and persistence were not significantly limited. (*Id.*) Dr. Balunas explained that, "due to [illegible]

8

depression, moderate, she is moderately limited in her ability to remember and carry out detailed instructions [and] maintain prolonged concentration, but [d]espite these limitations, she is able to perform unskilled work." (Tr. at 115.)

After review of Plaintiff's medical records, a DDS agency physician concluded in October 2004 (Tr. at 113-24) that Plaintiff could occasionally lift 10 pounds, frequently lift no more than 5 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, is occasionally limited in her ability to climb or crawl, and is frequently limited in all other postural limitations. (Tr. at 118-19.) He also found Plaintiff limited in pushing and pulling with her upper extremities and limited in all manipulative areas. (Tr. at 119-20.) Plaintiff exhibited no visual, communicative or environmental limitations other than hazards from machinery. (Tr. at 120-21.) He also noted that Plaintiff's limitations were not significantly different from the treating source conclusions. (Tr. at 123; Tr. at 96 (Plaintiff's right arm was functional but overhead movement was painful and Plaintiff should not lift over 10 pounds and should not lift on a repetitive basis).)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 6, 2003, and that Plaintiff meets the insured status requirements through December 31, 2008. (Tr. at 17.)  At step two, the ALJ found that Plaintiff's left elbow contracture, bilateral acromioclavicular joint arthritis, degenerative disc disease, obesity, and depression were "severe" within the meaning of the second sequential step. (Tr. at 18.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work

9

as a packager (unskilled, medium work), corrections officer (semi-skilled, heavy work), or restaurant worker (unskilled, medium to heavy work). (Tr. at 24.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available such as attendant (3,500), monitor (2,500), telemarketer (800), information clerk (3,000), and telephone clerk (3,000), in the national and regional economy, i.e., the lower half of the lower peninsula of Michigan. (Tr. at 25.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. at 19, 25), and she thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 23.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ failed to consider her left arm limitations, as determined by Dr. Kountanis, to equal listed impairment 1.08 and 1.00. (Dkt. 8 at 6-8.) Listing 1.06 deals with "soft tissue injury" which is under "continuing surgical management" and presumes the loss of a "major function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, §1.08. While Plaintiff did undergo one surgery to the left arm and shoulder, I suggest that the record does not support a finding that Plaintiff is under "continuing surgical management." Moreover, as Plaintiff concedes, the DDS physician (Dr. Digby) concluded that Plaintiff was limited in pushing and pulling with her upper extremities, was limited in all manipulative areas (Tr. at 119-20), that Plaintiff could occasionally lift 10 pounds, and could frequently lift no more than 5 pounds. (Tr. at 118-19.) Dr. Kountanis noted that overhead movement was painful, that she should not lift over 10 pounds and that she should not lift on a repetitive basis. (Tr. at 96.) The findings of the DDS physician are consistent with those made by Dr. Kountanis. Therefore, reference to Dr. Kountanis's conclusions do not undermine the ALJ's finding that Plaintiff did not meet a listed impairment nor does it challenge the ALJ's ultimate conclusion that Plaintiff is not disabled.

Plaintiff also contends that the ALJ did not properly analyze the credibility of her subjective complaints of pain. (Dkt. 8 at 6-12.) Under the test set forth in *Duncan v. Sec'y of Health and*

*Human Servs.*, 801 F.2d 847 (6th Cir. 1986), "[f]irst the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at 853. If there is, Plaintiff is not required to establish objective evidence of the pain itself but the court will examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky,* 35 F.3d at 1038-39. The Regulations provide the following guidelines in evaluating whether the medically determinable impairment could reasonably be expected to produce a plaintiff's alleged symptoms such as pain:

> [T]he entire record of medical and nonmedical evidence will be considered in evaluating the intensity and persistence of those symptoms, including the following factors: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In the instant case, the ALJ expressly considered all of the above factors and considered Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms of physical disability to be "not entirely credible." (Tr. at 20-21.) I suggest that substantial evidence supports the ALJ's finding. Plaintiff indicated that she wakes her children, showers, cooks meals, and does laundry on a daily basis; she is also able to wash dishes, go outside daily to get takeout food, drive herself, and grocery shop once a week. (Tr. at 63, 65.) Plaintiff also

reads, watches television, and attends her children's sport events once every couple of weeks. (Tr. at 66.) Plaintiff testified that she can climb stairs, volunteer at her children's school and that she attempted to obtain a job with the Waverly Community Schools as a bus driver. (Tr. at 280, 274, 275, 288.)

Plaintiff argues that she "would be capable of engaging in substantial gainful activity only by enduring great pain and should, therefore, be found disabled . . . ." (Dkt. 8 at 9.) Plaintiff relies on *Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1967), wherein the Sixth Circuit held that if daily activities are "intermittent and not continuous, and [are] done in spite of the pain suffered," plaintiff's ability to do those activities does not mean plaintiff is not disabled where he "can engage in substantial activity only by enduring great pain." *Id*. at 586. Here, however, the ALJ did not find that these were intermittent activities but rather found that her daily activities supported her ability to do some type of unskilled light or sedentary work. (Tr. at 21.) I suggest that substantial evidence supports this finding. *See Jones v. Comm'r of Social Security*, 23 Fed. App'x 339, 340 (6th Cir. 2001) (finding substantial evidence supported ALJ determination that daily activities of feeding chickens, mowing lawn, and fishing supported ability to engage in substantial gainful activity rather than intermittent abilities).

The ALJ also properly noted that Plaintiff attempted to "find a job driving a school bus, which is not within her residual functional capacity, demonstrating that she believes she can perform some type of work." (Tr. at 21, 274, 288.) *Walston* also stands for the proposition that where, as here, "an applicant has unsuccessfully attempted to secure employment, less evidence is needed to support a finding of disability than where the applicant has failed to make such an effort." *Walston*, 381 F.2d at 586-87.

Furthermore, although in this Circuit "[t]he opinion of a non-examining physician . . . 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician,'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003), the opinions expressed by the DDS agency physician regarding Plaintiff's residual capacity are consistent with the findings of Plaintiff's treating physicians. (Tr. at 123.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians. (Tr. at 81-83, 85-87, 89-92, 95-96, 113-15, 118-20, 142-48, 293-95.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that she finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. As indicated above, I suggest that substantial evidence supports the ALJ's credibility determination and therefore also find that substantial evidence supports the hypothetical provided to the VE.

As to Plaintiff's claims of disabling mental impairments, the evidence in this case falls considerably short of that found sufficient in this circuit to uphold a finding of disability. *See*

*Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991) (claimant experienced "continuing and unrelenting episodes of violent and suicidal behavior, chronic anxiety and abnormal dependency with an inability to handle stress"). I suggest that the administrative record in this case, particularly the Plaintiff's own statements regarding her own activities, is instead much more consistent with those cases in this Circuit finding that allegations of disabling mental impairments failed to justify the award of benefits. *See Hogg v. Sullivan*, 987 F.2d 328 (6th Cir. 1992); *Foster v. Bowen*, 853 F.2d 483 (6th Cir. 1988). There is no indication in this record that the combination of Plaintiff's physical and mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ *Charles E Binder*
CHARLES E. BINDER
United States Magistrate Judge

Dated: June 23, 2008

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, Mikel E. Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Friedman in the traditional manner.


Date:  June 23, 2008           By      s/Patricia T. Morris
                                Law Clerk to Magistrate Judge Binder